UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THOMAS LEWIS,

                          Petitioner,

        -against-

ANTHONY ZON,

                      Respondent.

---

03 Civ. 8359 (RJH)

**<u>MEMORANDUM OPINION
AND ORDER</u>**

Thomas Lewis ("Lewis") brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254, following his 1999 conviction in the Supreme Court of the State of New York, New York County for second degree robbery. Lewis was sentenced as a second violent felony offender to a determinate term of imprisonment of fifteen years. In the main, petitioner challenges the ad hoc competency procedure the state trial court employed to supplement, and effectively, supplant the statutorily-mandated adversary hearing. At the hearing, two court-appointed psychiatric examiners testified that petitioner had not been competent at the time of their examination four months earlier. The state's chosen psychiatric examiner testified that, on the basis of his slightly more recent examination, petitioner was competent to stand trial. All three witnesses were cross-examined at a hearing on the record. After closing the hearing, the trial court apparently believed another psychiatric examination was required, and therefore commissioned a social worker to examine petitioner. Upon receiving the social worker's

written opinion that petitioner was, in fact, competent to stand trial, the trial court issued an order so finding, placing heavy reliance on the social worker's report. Petitioner was never afforded an opportunity to respond to the social worker's report in any way—he could not contest the social worker's qualifications, the accuracy of his factual assessments, the propriety of his method of analysis, or the reliability of his conclusions; he could not present contradictory psychiatric evidence of petitioner's mental state at the time of the social worker's examination; and he could not subject the social worker to cross-examination. The court did not offer any reason for its foreclosure of petitioner's ability to respond to the social worker's report. Nor did the court, or the state appellate court, which affirmed the decision, provide any reason to believe that the limitations on petitioner's opportunity to be heard were required by (or even consistent with) the state's carefully crafted statutory regime.

On February 1, 2007, Magistrate Judge Henry Pitman issued a report (the "Report") finding that the trial court's procedures violated petitioner's rights under the Confrontation Clause. However, Judge Pitman concluded that the application of the Confrontation Clause to pre-trial competency hearings was not clearly established, and therefore recommended that the petition be denied. Petitioner has objected to the Report. The Court concurs with Judge Pitman's determination that the trial court's competency procedure violated petitioner's constitutional rights, but concludes that petitioner's claim is more properly analyzed under the Due Process Clause. For the reasons that follow, the Court finds that the state court's reliance on an ad hoc supplement to New York's competency procedure involved an unreasonable application of clearly established federal law.

**BACKGROUND**

The facts and procedural history of this case are ably stated in Judge Pitman's thorough Report, familiarity with which is assumed.  Lewis has been afflicted with severe psychiatric problems nearly his entire life.  (Report 4; Resp. Opp. Decl. Ex. B ("Bodek Exam. Rep.") 1–3, 8–9.)  He has undergone "numerous . . . psychiatric hospitalizations at all the major hospitals located in New York City."  (Pet. Supp. App. Ex. B ("Gordon Exam. Rep.") at 3; *see also* Bodek Exam. Rep. 2–3 (listing hospitals).)  Mental health professionals have given Lewis a "variety of diagnoses over time, ranging from schizophrenia, schizoaffective disorder, psychosis not otherwise specified, major depression and various personality disorders."  (Bodek Exam. Rep. 3.)

The incident that led to Lewis's arrest and conviction occurred less than twenty-four hours after he had been released from a three-week psychiatric admission at Presbyterian Hospital.  (*Id.* at 1; *see also* Huntley Hearing Tr. 42, May 19, 1999.)  Lewis's chief complaint upon his admission was "I will take any opportunity to kill myself."  (Pet. App. Ex. K "Trachtenberg Exam. Rep." at 5).  At the suppression hearing, Lewis testified that immediately prior to hospitalization, he attempted suicide by jumping in front of a train.  (Huntley Hearing Tr. 43, May 19, 1999.)  While at Presbyterian, Lewis was placed on suicide-watch and was medicated with an antipsychotic, a mood-stabilizer, an anti-anxiety agent, and an anticonvulsant.  (Trachtenberg Exam. Rep. at 5.)  Lewis was discharged, "as substantially improved" on September 1, 1998.  (*Id.*)

At two in the morning on September 2, 1998, Lewis approached a man named Abdul Butt on 137th Street near Broadway.  Lewis asked Butt for money and Butt obliged.  Butt removed his wallet from his pants pocket and gave Lewis a dollar.  Lewis

asked for more money, but Butt refused.  Lewis told Butt that if Butt was not going to give him the money, Lewis would "have to do something about it."  Lewis placed his hand near his waist on a bulge that Butt believed to be a gun.  Butt froze for a few seconds with his wallet in his hands.  Lewis grabbed money and papers from Butt's wallet.  Lewis discarded the papers and walked away with the money—eight dollars in total.  Butt did not inform police of the incident that night.  The next day, however, Butt saw Lewis again and decided to call the police.  Police arrested Lewis, and upon searching him, found a knife tucked into his waistband.  Lewis was charged with, and ultimately convicted of, robbery in the second degree.  Under New York law a person is guilty of second degree robbery "when he forcibly steals property and when . . . [i]n the course of the commission of the crime or immediate flight therefrom, he or another participant in the crime . . . [d]isplays what appears to be a be a pistol, revolver, rifle, shotgun, machine gun or other firearm."  N.Y. Penal § 160.10(2)(b).

I.      **The Competency Hearing**

Before the suppression hearing and trial, petitioner's counsel requested that petitioner be examined to determine his competency to stand trial.  (Pet. Supp. App. Ex. G. ("Decision and Order, Apr. 28, 1999").)  The court granted the request and ordered that petitioner be examined, as the court was "of the opinion that the [petitioner] may be an incapacitated person." (Resp. Opp. Decl. Ex. A ("Order for Psychiatric Examination, Nov. 4, 1998").)  The trial court's belief that petitioner might be incompetent triggered the detailed statutory regime New York has enacted to safeguard the right of criminal defendants not be tried while incompetent.  Under this scheme, where the court is of the opinion that the defendant may be incompetent, the court must order the appropriate state

or local mental health services official to designate two qualified psychiatric examiners to examine the defendant. N.Y. Crim. Proc. §§ 730.10(4),(7), 730.20(1), 730.30(1). If the two examiners agree as to the defendant's competency, or lack of competency, a further hearing is required if either of the parties requests it or if the judge orders such a hearing *sua sponte*. *Id.* § 730.30(2), (3). Where the examiners disagree, the court must hold a hearing. *Id.* § 730.30(4). The New York Court of Appeals has interpreted Article 730 to allow the parties to retain independent experts to present psychiatric testimony and to assist them in contesting the competency determinations of the initial psychiatric examiners. *See People v. Christopher*, 482 N.E.2d 45, 48–49 (N.Y. 1985).

In this case, after the court issued an order for an Article 730 competency examination, two qualified psychiatric examiners designated by the New York City Commissioner of Mental Health, Mental Retardation and Alcoholism Services, Drs. Murray Gordon and Howard Owens, examined petitioner on November 23, 1998. (Pet. Supp. App. Ex. B ("Gordon Exam. Rep."), Ex. C "Owens Exam Rep.").) On December 9, 1998, Owens and Gordon submitted their reports to the Court; both found that petitioner was incompetent to proceed. (*Id.*) On December 23, the prosecutor moved to controvert the findings of Owens and Gordon pursuant to § 730.30(3). (Decision and Order, Apr. 28, 1999 at 2; Resp. Supp. Memo in Opp. 4.) The district attorney's office retained Dr. Stuart Kirschner to assess petitioner's competency. (Pet. Supp. App. Ex. D at 1–2 ("Kirschner Exam. Rep.").) Dr. Kirschner examined petitioner on January 22, 1999, and prepared a report dated March 18, 1999, in which he opined that petitioner was competent to stand trial.

On March 23 and March 25, 1999, the court conducted a hearing on petitioner's competence. (Decision and Order, Apr. 28, 1999 at 1.) Drs. Owens, Gordon and Kirschner each testified and were cross-examined. (Competency Hr'g Tr. 3, 29, 109, 155, 234, 256.) Drs. Owens and Gordon both testified that petitioner was not competent to stand trial as of November 1998, but that at the time of the hearing, they could not rule out the possibility that his condition could have changed in the intervening four months. (Tr. 26–27, 250–51.) Dr. Kirschner, who had examined defendant in January 1999, testified that petitioner was fit to proceed with trial. (Tr. 153.) At the end of the hearing, Justice Scherer advised the parties that they had until April 9, 1999 to submit additional materials or argument, and set the case down for decision on April 14. (Tr. 279–80.)

## II. The Court's Post-Hearing Fact-Finding

It appears that Justice Scherer did not find the evidence presented at the hearing to be sufficient to determine defendant's competency. On April 1, the trial court ordered that a fourth mental health examination of petitioner to be performed by Hillel Bodek, M.S.W., C.S.W. (Decision and Order, Apr. 28, 1999 at 3 (referring to the April 1 Order).) The April 1 order was not transmitted to petitioner's counsel at that time (Pet. Supp. App. Ex. E at 1 ("Michaels Letter, Apr. 16, 1999")), and apparently was not made part of the Supreme Court's file. (Pet. Supp. App. Ex. M at 12, n.3 ("Pet. Appellate Br.").) In an April 16 letter to the court, petitioner's counsel noted that the previous week he learned from the court's staff that the court had ordered further examination of the defendant to determine whether he was "cognitively impaired." (Michaels Letter, Apr. 16, 1999 at 2.) Counsel argued that petitioner should first be re-examined as to fitness by the two court-appointed experts, Drs. Owen and Fordon, as they were unable to provide a

current opinion at the competency hearing due to the passage of time since their determination in November 1998 that petitioner was incompetent. (*Id.*) Counsel argued that this examination was "ill-advised until the defendant has been re-examined by medical personnel on the issue of his fitness to proceed." (*Id.*)

Bodek's report is dated April 21, 1999, and it appears that a copy was provided to defense counsel. (Resp. Opp. Decl. Ex. B at 1, 19 ("Bodek Exam. Rep.").) Bodek reported that he had "examined [petitioner] comprehensively," and stated that although petitioner suffered from chronic episodic paranoid schizophrenia, he was presently competent to proceed. (*Id.* at 3–4.) Bodek explained that the diagnosis of a major depressive disorder made by Drs. Owen and Gordon was "supported" by the information available to them, but characterized that assessment as "hampered" by a limited examination and lack of access to petitioner's medical history. (*Id.* at 1, 3.)

Without further proceedings, the court issued a decision and order on April 28, 1999, finding that petitioner was competent to stand trial. In reaching this conclusion, the court "relied heavily on the findings of Mr. Bodek who is the only person to have performed an in-depth evaluation of the defendant over some period of time." (Decision and Order, Apr. 28, 1999 at 3.) The court also noted that "almost five months" had passed since the examination by Drs. Gordon and Owens, during which time defendant had been receiving medication. (*Id.*) Moreover, their diagnosis of profound depression was "inconsistent" with the "conclusions reached by Mr. Bodek." (*Id.* at 4.) On May 13, the court orally denied defense counsel's application that defendant be re-examined pursuant to Article 730. (Tr. of May 13, 1999, at 4.) The court stated:

> [W]ith respect to your application that your client be reexamined pursuant to 730, I'm denying that application. Your client was just examined pursuant to 730. We

have just completed a hearing on the last occasion, and I rendered my decision with respect to his fitness, and I have no reason and no basis to believe that there has been any change in circumstances. And I do not believe that this is appropriate, at this time, just having concluded that hearing.

*Id.*

Petitioner was later examined by a court-appointed psychiatrist, Dr. David Trachtenberg, in connection with his application to present psychiatric evidence to support his claim that he was not responsible at the time of the crime by reason of mental illness or defect. Dr. Trachtenberg advised the court that while petitioner "clearly suffers from a chronic mental illness" he did not believe that petitioner was suffering from any "psychotic symptoms that could render him not responsible by reason of mental illness or defect." (Trachtenberg Exam. Rep. at 8.) Although Dr. Trachtenberg was not requested to assess petitioner's competency to stand trial, (Resp. Opp. Decl. Ex. D at 1 "Order, May 13, 1999")), he did so, opining in his report that based on his examinations on May 15 and 16, 1999, petitioner was competent, ("Trachtenberg Exam Rep. at 1, 7–8.)


III.     **The Appellate Division's Decision**

Petitioner timely appealed his conviction to the Appellate Division of the New York Supreme Court, First Department. Petitioner argued, *inter alia*, that the trial court's heavy reliance on a report commissioned without notice by a statutorily unqualified examiner (Mr. Bodek was a social worker) deprived petitioner of his right to due process of law as petitioner was unable to controvert Bodek's report by cross-examining him or by having petitioner re-examined by the two examiners who had found him incompetent, Drs. Owens and Gordon. (Pet. Appellate Br. 53–55.) The Appellate Division affirmed petitioner's conviction, finding, in relevant part:

> Defendant was properly found to be competent to stand trial. The
> competency hearing court fully complied with the requirements of CPL
> article 730.  After psychiatric examinations of defendant in accordance
> with the statute, a hearing was held at which both defendant and the
> prosecution presented expert testimony. Contrary to defendant's
> contention, he was not entitled to a new examination, particularly since
> there was no basis to conclude that his condition had changed in the four
> months since he had been examined.[1]  In making its determination the
> court properly relied upon all the relevant evidence, including a court-
> appointed clinical social worker's report, which supplemented the
> mandatory psychiatric reports.

*People v. Lewis*, 758 N.Y.S.2d 1, 3 (N.Y. App. Div. 2003) (internal citations omitted).

The Appellate Division did not explicitly address the fact that the social worker's report

was prepared after the hearing and that petitioner therefore had no opportunity at the

hearing to contest the report's findings.   Petitioner then sought leave to appeal from the

Court of Appeals based on all of the issues raised in his brief to the Appellate Division,

including his claim that the competency hearing procedure violated due process.  (Resp.

Opp. Decl. Ex. I at 2–3.)  Leave to appeal was denied.  (Resp. Opp. Decl. Ex. J.)


**IV.      The Petition and the Report**

Petitioner's timely filed petition directly incorporated the arguments raised on his

direct appeal.  In supplemental briefing before Magistrate Judge Pitman, petitioner

argued that the competency proceedings were constitutionally infirm for four related

reasons:  (1) the trial court failed to order a new competency examination at the time of

the hearing; (2) the trial court failed to hold a second competency hearing in light of

---

[1] The Appellate Division's finding in this regard appears to be erroneous as the examinations by the court-appointed experts, Drs. Owens and Gordon, four months before the competency hearing had concluded that petitioner was *in*competent.  They offered no opinion at the hearing as to petitioner's competency at that time due precisely to the possibility that his condition had changed.  And, of course, the trial court concluded that petitioner was competent and noted, *inter alia*, that the opinions of Drs. Owens and Gordon were stale by the time of the hearing.  (Decision and Order, Apr. 28, 1999 at 3.)

petitioner's behavior during trial and the opinion of his counsel; (3) the trial court did not

afford petitioner an opportunity to confront and cross-examine Bodek; (4) the trial court

prevented petitioner from presenting further testimony from Drs. Gordon and Owens

following a re-examination of petitioner. (Pet. Supp. Mem. 19–32.) The Report rejected

the first, second, and fourth arguments, finding that the trial judge's decision not to

reopen the competency hearing did not constitute an abuse of discretion. (Report 39–43.)

As to the third argument, the Report recommended finding that while the trial court's

failure to allow petitioner to confront and cross-examine Bodek was a violation of the

Sixth Amendment, this error did not constitute an unreasonable application of clearly

established federal law. (Report 46–47.) Petitioner filed a timely objection to the Report,

arguing, in relevant part, that a defendant's right to confront witnesses in pre-trial

competency hearings was clearly established (Pet. Obj. 3–11), and that the trial court's

conduct of the competency proceedings violated petitioner's due process rights (*Id.* 19–

20).


## DISCUSSION

### I.      Review of the Magistrate Judge's Report

A district court "may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where

timely objections are made, the court must "make a de novo determination of those

portions of the report or specified proposed findings or recommendations to which

objection is made." *Id.*; *accord United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir.

1997). "To accept those portions of the report to which no timely objection has been

made, a district court need only satisfy itself that there is no clear error on the face of the record." *Arthur v. Goord*, No. 06 Civ. 326 (DLC), 2008 U.S. Dist. LEXIS 12841, at *8 (S.D.N.Y. Feb. 21, 2008). In light of petitioner's timely objections to the Report, the Court reviews the Report *de novo*.


## II.     AEDPA Review of the State Court Proceedings

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, habeas petitions under Section 2254 may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (d)(2).

This deference is required under AEDPA if the petitioner's claim "was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d); *see Bell v. Miller*, 500 F.3d 149, 154–155 (2d Cir. 2007). However, habeas relief is generally barred unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). A claim is not exhausted if "applicable state court remedies remain available to the petitioner" or if the petitioner has not "fairly presented his or her claims to the state courts, such that the state court had a fair opportunity to act." *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005) (internal citations omitted); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.") This second inquiry

"embodies the concept of procedural default. A petitioner may not evade exhaustion's strictures by defaulting his or her federal claims in state court." *Galdamez*, 394 F.3d at 73–74. The Second Circuit has recently instructed that the same inquiry should guide courts in determining whether a state adjudication is "on the merits" as when deciding whether there has been a procedural default. *Jimenez v. Walker*, 458 F.3d 130, 145 (2d Cir. 2006).

In this case, petitioner argued that the competency proceedings deprived him of his right to due process of law under the United States Constitution. (Pet. Appellate Br. 53–55.) The Appellate Division rejected this claim on the merits relying on *People v. Gensler*, 72 N.Y.2d 239, 245–46, 527 N.E.2d 1209, 1212 (1988) (discussing due process requirements of *Pate v. Robinson*, 383 U.S. 375 (1966) and *Drope v. Missouri*, 420 U.S. 162 (1975)). *See Lewis*, 758 N.Y.S.2d at 3. Petitioner's application to the Court of Appeals for leave to appeal the Appellate Division's decision on his due process claim was denied. (Resp. Opp. Decl. Ex. I at 2–3, Ex. J.) Therefore the Court finds that petitioner has properly exhausted his due process claims, and that the Appellate Division's decision denying those claims is entitled to deference under AEDPA. *See Jimenez*, 458 F.3d at 145 ("Absent a clear and express statement of reliance on a state procedural bar," state court decisions that fairly appear to rest primarily on federal law or to be interwoven with federal law "are not procedurally barred and must be afforded AEDPA deference as adjudications 'on the merits' under 28 U.S.C. § 2254(d)."); *Galdamez*, 394 F.3d at 74 ("In New York, to invoke one complete round of the State's established appellate review process, a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction

by applying to the Court of Appeals for a certificate granting leave to appeal.")  (internal

citations omitted).  The Court now turns to the merits of petitioner's claim that the

Appellate Division's rejection of his due process claims was contrary to, or an

unreasonable application of, clearly established federal law.


**III.     Clearly Established Federal Law**

"Clearly established federal law" "refers to the holdings, as opposed to the dicta,

of [the Supreme] Court's decisions as of the time of the relevant state-court decision."

*Williams v. Taylor*, 529 U.S. 362, 412 (2000).[2]  "No principle of constitutional law

grounded solely in the holdings of the various courts of appeals or even in the dicta of the

Supreme Court can provide the basis for habeas relief."  *Rodriguez v. Miller*, 499 F.3d

136, 140 (2d Cir. 2007).

Long before the Appellate Division's decision in this case, the general rule that

"the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution

of a defendant who is not competent to stand trial" was "well-established."  *Medina v.

California*, 505 U.S. 437, 439 (1992) (citing *Drope v. Missouri*, 420 U.S. 162 (1975) and

*Pate v. Robinson*, 383 U.S. 375 (1966)).  The Supreme Court has noted that this

"prohibition is fundamental to an adversary system of justice," *Drope*, 420 U.S. at 172,

and emphasized that "[c]ompetence to stand trial is rudimentary, for upon it depends the

main part of those rights deemed essential to a fair trial, including the right to effective

---

[2] It is somewhat unclear whether the "clearly established federal law" is fixed at the time of the relevant state court decision or at the time when the conviction becomes final under AEDPA.  *See Portalatin v. Graham*, 478 F. Supp. 2d 385, 395 n.9 (E.D.N.Y. 2007) (citing *Brown v. Grenier*, 409 F.3d 523, 533 n.3 (2d Cir. 2005).  However, the Court need not answer this question here, as neither the parties nor the Court rely on any Supreme Court decision decided after the Appellate Division's opinion but before Lewis's conviction became final.

assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so," *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (quoting *Riggins v. Nevada*, 504 U.S. 127, 139–140 (Kennedy, J., concurring in judgment)).  The test for incompetence is also well-settled:  "A defendant may not be put to trial unless he 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him." *Cooper*, 517 U.S. at 354 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (omissions and alterations in original).

The Supreme Court has held that the centrality of the right to be competent requires that, as a matter of procedural due process, "state procedures must be adequate to protect this right."  *Pate*, 383 U.S. at 378; *see also Hull v. Kyler*, 190 F.3d 88, 110 (3d Cir. 1999) ("*Pate* . . . required states to provide adequate procedures to ensure that only competent defendants were tried (and convicted).").  Thus, in *Pate v. Robinson*, 383 U.S. 375, 385 (1966), the Court held that due process had been violated because the state court had failed to follow a state statute requiring that a jury be impaneled where there was a bona fide doubt of defendant's competence.  The Court found that the significant evidence of the defendant's "pronounced irrational behavior" that was presented at trial required a stand-alone competency hearing in spite of the trial court's assessment of its colloquies with defendant and the stipulation that a psychiatrist would testify that defendant "knew the nature of the charges against him and was able to cooperate with counsel when he examined him two or three months before trial."  *Pate*, 383 U.S. at 383; *see also id.* at 386 ("While Robinson's demeanor at trial might be relevant to the ultimate

decision as to his sanity,[3] it cannot be relied upon to dispense with a hearing on that very issue.").  Likewise, in *Drope v. Missouri*, 420 U.S. 162 (1975), the Court held that while Missouri's statutory scheme,[4] like Illinois' procedure in *Pate*, was "constitutionally adequate" to safeguard the right not to be tried while incompetent, *Drope*, 420 U.S. at 173, the defendant was deprived of his due process rights when the state courts failed to follow the scheme and order a psychiatric examination after defendant attempted to commit suicide during the trial, *id.* at 180.

While the Supreme Court has not set forth a comprehensive standard for assessing the adequacy of competency procedures, its decisions delineate the basic nature and scope of what due process requires under the Fifth and Fourteenth Amendments.  As a threshold matter, the Supreme Court has held that a state court need only make adequate procedures available to a criminal defendant where there is a sufficient doubt as to the defendant's competence.  *See Drope*, 420 U.S. at 180 (finding evidence before the state court "created a sufficient doubt of [petitioner's] competence to stand trial to require further inquiry on the question").  Where there is a sufficient doubt as to the defendant's competence, the state must then afford the defendant "*a reasonable opportunity to demonstrate that he is not competent to stand trial*."  *Medina*, 505 U.S. at 451; *see also id*. at 449 (holding that while the state must provide a "defendant access to procedures for making a competency evaluation" it need not shoulder the burden of proof in convincing the trier of fact that the defendant is competent).

---

[3] As the Court's opinion explained, under Illinois law at the time, "sanity" referred to both the question of criminal responsibility and competence to stand trial.  *Pate*, 383 U.S. at 384, n.6.

[4] Missouri, like New York, required that, upon a finding of reasonable cause to believe that the defendant was incompetent, the trial court must first order a psychiatric examination and report, and then hold a hearing if either side contested the competency opinion.  *Drope*, 420 U.S. at 173.

## IV.    An Unreasonable Application

While the Supreme Court has "admonishe[d] courts to read [its] holdings narrowly," *Rodriguez v. Miller*, 499 F.3d 136, 140 (2d Cir. 2007) (citing *Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649 (2006)), "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied." *Panetti v. Quarterman*, 127 S. Ct. 2842, 2858 (2007) (quoting *Musladin*, 127 S. Ct. at 656 (Kennedy, J., concurring in judgment)). "Nor does AEDPA prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts 'different from those of the case in which the principle was announced.'" *Id.* (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)). Likewise, while under AEDPA "[t]he more general the rule, the more leeway [state] courts have in reaching outcomes in case-by-case determinations," *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004), "even a general standard may be applied in an unreasonable manner." *Panetti*, 127 S. Ct. at 2858.

As noted above, by the time of the Appellate Division's decision, the Supreme Court had held that due process required that criminal defendants whose competence was sufficiently in doubt be afforded a "reasonable opportunity to demonstrate" that they were not competent. *Medina*, 505 U.S. at 451. There is no question that petitioner's competence was in doubt.[5] The question then, is whether the Appellate Division's endorsement of a procedure whereby defendant's competence was determined on

---

[5] The trial court believed that Lewis's competence was sufficiently doubtful to conduct an examination and hold a hearing. After the hearing was closed, the court ordered a supplemental examination, presumably because there remained a reason to doubt Lewis's competence. The Appellate Division did not find otherwise.

evidence procured by the court after the competency hearing was completed, and with respect to which defendant had no opportunity to contest, was a reasonable application of the constitutional standard set in *Pate*, *Drope*, and *Medina*. The trial court found Lewis competent to stand trial "rel[ying] heavily on the findings of Mr. Bodek" (Decision and Order, Apr. 28, 1999 at 3), but without providing petitioner the opportunity to rebut Bodek's opinions or to subject him to cross-examination. The trial court's limitations on Lewis's right to demonstrate his lack of competence were asymmetric and unexplained. While the court allowed the state to confront and cross-examine Lewis's witnesses, Lewis had no opportunity to confront and cross-examine a key witness against him. While the state was allowed to gather evidence and present testimony that contradicted the stale testimony of the state-appointed doctors called by Lewis, Lewis was not given the chance to have these witnesses re-examine him and testify as to their more current findings. Neither the trial court nor the Appellate Division nor even respondent have proffered any reason[6] to justify limiting Lewis's access to the adequate procedures afforded by New York law and to which he was entitled under *Pate*, *Drope*, and *Medina*.

In these circumstances, it was an unreasonable application of clearly established Supreme Court precedent to conclude that Lewis was given a reasonable opportunity to demonstrate the fact of his incompetence without having a chance to respond to material, indeed outcome determinative evidence solicited after the conclusion of a competency hearing. The contrary view implicitly advanced by respondent—that as long as the defendant is given the opportunity to present evidence favorable to him, he is not entitled

---

[6] While it is possible that the trial court was concerned that allowing Lewis to contest Bodek's determination would delay the trial, the Supreme Court has held that a state's interest in the "prompt disposition of criminal charges," is "modest" when compared to the defendant's interest in avoiding "an erroneous determination of competence." *Cooper*, 517 U.S. at 364–65.

to a meaningful chance to call unfavorable evidence submitted against him into question—is fundamentally incompatible with any plausible understanding of the Supreme Court's competency jurisprudence. Moreover, even if it reasonably could have been doubted that Lewis was entitled to respond to and controvert evidence presented against him, basic fairness dictated that Lewis be given the same opportunity as the prosecution to challenge adverse evidence.

The Court's conclusion that the procedure employed by the state court fell below the minimum process required by Supreme Court precedent is further buttressed by reference to Supreme Court jurisprudence regarding post-trial competency hearings in death penalty cases. In *Ford v. Wainwright*, 477 U.S. 399 (1986), the Court found unconstitutional a Florida procedure that empowered the Governor to make a competency determination on the basis of three psychiatric opinions but without consideration of evidence submitted by the prisoner. Justice Powell's controlling concurrence[7] held that once a showing of incompetence has been made[8] the principle of fundamental fairness at the heart of the "procedural protections afforded by the Due Process Clause" dictated that a "fair hearing" with a neutral decision-maker is required to safeguard the Eighth Amendment's prohibition on the execution of the insane. *Ford*, 477 U.S. at 424–26

---

[7] *See Panetti v. Quarterman*, 127 S. Ct. 2842, 2856 (2007) ("Justice Powell's opinion constitutes 'clearly established' law for purposes of § 2254 and sets the minimum procedures a State must provide to a prisoner raising a *Ford*-based competency claim.")

[8] It bears noting that the substantive standard for determining competency to be executed appears to be less protective than the standard for competency to stand trial. *Compare Ford*, 477 U.S. at 422 (Powell, J., concurring) ("I would hold that the Eighth Amendment forbids the execution only of those who are unaware of the punishment they are about to suffer and why they are to suffer it."), *and id.* at 417 (Marshall, J., plurality opinion) (finding that Eighth Amendment forbids execution of "one whose mental illness prevents him from comprehending the reasons for the penalty or its implications"), *with Cooper*, 517 U.S. at 354 ("A defendant may not be put to trial unless he 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him.'" (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (omissions and alterations in original))).

(Powell, J., concurring in part and concurring in the judgment). Justice Powell concluded that Florida's procedure did not comport with procedural due process because the inmate had had been prevented from "offering contrary medical evidence or even from explaining the inadequacies of the State's examinations." *Id.*; *see also id.* at 430 (noting that "if there is one fundamental requisite of due process, it is that an individual is entitled to an opportunity to be heard") (internal quotations omitted). Justice Powell wrote that while a full-blown sanity trial with cross-examination was not required, *see id.* at 426, at a minimum, states "should provide an impartial officer or board that can receive evidence and argument from the prisoner's counsel, including expert psychiatric evidence that may differ from the State's own psychiatric examination," *id.* at 427. Further, Justice Powell observed that "[a]s long as basic fairness is observed" states should have substantial leeway to determine appropriate procedures. *Id.*

The requirement of a fair procedure to determine a defendant's competence is at least as compelling before trial as it is afterwards. While the Supreme Court held in *Cooper v. Oklahoma*, 517 U.S. at 364, that "an erroneous determination of [trial] competence threatens a fundamental component of our criminal justice system—the basic fairness of the trial itself," Justice Powell's concurrence in *Ford* explained that the due process protections necessary to safeguard the Eighth Amendment right not to be executed while incompetent were relatively circumscribed.[9] Justice Powell observed that death competency claims present an "important" question but one that is "not comparable

---

[9] Justice Powell's conclusion that the demands of due process were tempered by the state's interests in finality were shared by the four dissenters in *Ford*. *See Ford*, 477 U.S at 429 (O'Connor, J., concurring in the result in part and dissenting in part) ("I consider it self-evident that once society has validly convicted an individual of a crime and therefore established its right to punish, the demands of due process are reduced accordingly."); *id.* at 435 (Rehnquist, J., dissenting) ("The defendant has already had a full trial on the issue of guilt, and a trial on the issue of penalty; the requirement of still a third adjudication offers an invitation to those who have nothing to lose by accepting it to advance entirely spurious claims of insanity.")

to the antecedent question whether [the inmate] should be executed at all" and one which does not cast doubt on the "State['s] substantial and legitimate interest in taking [the inmate's] life as punishment for his crime." *Id.* at 425. Moreover, by virtue of his conviction and sentence, an inmate claiming a lack of competence to be executed must have already been "judged competent to stand trial, or his competency must have been sufficiently clear as not to raise a serious question for the trial court." *Id.* at 426. Similarly, while the Supreme Court's trial competency decisions identified a long history of proceedings before a neutral trier-of-fact to determine competence to stand trial, *see Cooper*, 517 U.S. at 362 (analyzing burden of proof employed in such proceedings by examining jury instructions dating back to the 1790s), at common law, the responsibility to determine whether an inmate's insanity precluded execution rested with the executive, *see Ford*, 477 U.S. at 431–33 (Rehnquist, J., dissenting).

The Supreme Court's recent decision in *Panetti v. Quarterman*, 127 S. Ct. 2842 (2007), construing Justice Powell's controlling concurrence is also instructive. In *Panetti*, the inmate had made a motion seeking a competency hearing supported by a letter and declaration from a psychologist and a law professor who opined that the inmate was not competent to be put to death. *Id.* at 2850. The trial court ordered the inmate examined by two mental health experts (as required by the state statute). *Id.* The experts reported that they believed that petitioner was competent to be executed. *Id.* at 2851. The Court advised petitioner's counsel that the competency determinations had been submitted and that counsel had ten days to make any additional motions. Petitioner's counsel did so, "criticiz[ing] the methodology and conclusions of the court-appointed experts," seeking funds for an independent expert, and requesting a competency hearing.

*Id.* The court then closed the case. *Id.* The Supreme Court held that *Ford* clearly established that it was constitutional error for the state court to "fail[] to provide petitioner with an adequate opportunity to submit expert evidence in response to the report filed by the court-appointed experts." *Id.* at 2857. In particular, the *Panetti* Court read Justice Powell's concurrence as clearly establishing the principle that due process requires that prisoners who have made a substantial showing that they are not competent to be executed must be provided with a "constitutionally adequate opportunity to be heard." *Id.* at 2858. This includes, "at a minimum, that a court allow a prisoner's counsel the opportunity to make an adequate response to evidence solicited by the state court." *Id.*

Although *Panetti* obviously post-dates the Appellate Division's decision, *Panetti*'s analysis of *Ford* is instructive for two reasons. First, *Panetti* confirms by analogy[10] this Court's independent conclusion that not allowing a defendant the opportunity to respond to evidence solicited by the state court to determine trial competency is inconsistent with a defendant's procedural due process right (recognized in *Pate*, *Drope*, and *Medina*) to a reasonable opportunity to demonstrate his lack of competence to stand trial. Second, *Panetti* guides this Court's analysis of the application of the AEDPA standard to the constitutional rights recognized in *Pate*, *Drope* and *Medina*. Whereas in *Panetti* the Supreme Court held that it was unreasonable to find that *Ford*'s general right to an "adequate opportunity to be heard" did not also encompass the

---

[10] As explained above, the requirements of procedural due process in trial competency proceedings are as demanding (if not more so) than those where an inmate's competency to be executed is at issue.

"opportunity to make an adequate response to evidence solicited by the state court,"[11] *id.*, here, this Court finds that it was unreasonable for the Appellate Division to find that a defendant's right to a "reasonable opportunity to demonstrate that he is not competent to stand trial," *Medina*, 505 U.S. at 451, did not also include the right to respond to evidence solicited by and relied heavily upon by the state court.

To be clear, even without the benefit of the closely analogous decision in *Panetti*, the Court would find that it was unreasonable for the Appellate Division to hold that a criminal defendant is afforded a reasonable opportunity to demonstrate his lack of competency even though he is precluded from responding to the evidence the trier of fact solicits and finds decisive.

One further point bears noting. The Appellate Division's decision is not only inconsistent with due process, it also is in apparent tension with the structure of New York's statutory regime, *see* N.Y. C. P. L. § 730.30(2) (mandating that where the court is not satisfied that the defendant is competent, "it must issue a further order of examination directing the defendant be examined by different psychiatric examiners designated by the director"). It seems clear that following the competency hearing the trial court was not

---

[11] There is some rhetorical tension between *Panetti*'s discussion (and application) of the general standard in *Ford* and *Carey v. Musladin*'s treatment of *Estelle v. Williams*, 425 U.S. 501 (1976), and *Holbrook v. Flynn*, 475 U.S. 560 (1986). In *Musladin*, the Court gave what the Second Circuit has described as "the narrowest possible reading to its holdings in *Williams* and *Flynn*." *Rodriguez v. Miller*, 499 F.3d 136, 140 (2d Cir. 2007). At issue in *Musladin* was whether the defendant had been deprived of a fair trial when family members of the victim wore buttons bearing the victim's picture at the defendant's trial. *Musladin*, 127 S. Ct. at 651. Distinguishing *Williams* and *Flynn* as involving "government-sponsored practices," *id.* at 653, the *Musladin* Court held that the state court decisions could not have involved an unreasonable application of clearly established federal law, "[g]iven the lack of holdings from this Court regarding the potentially prejudicial effect of *spectators*' courtroom conduct of the kind involved here," *id.* at 654 (emphasis added). However, *Panetti* makes plain that *Musladin*'s doctrinally narrow construction of precedent is inapposite where, as here, the Supreme Court has clearly set forth an applicable, albeit general, rule. In this case, there is no dispute that *Pate*, *Drope*, and *Medina* provide a general rule that governs pre-trial competency hearings. By contrast, in the absence of *Pate*, *Drope*, and *Medina*, the Supreme Court's decision in *Musladin* would presumably preclude this Court from construing *Ford* as clearly establishing the applicable due process standards for pre-trial competency hearings.

satisfied that Lewis was competent; indeed there would be no other reason for the court *sua sponte* to appoint Mr. Bodek to examine Lewis and then rely heavily on Bodek's opinion.  In such a situation, however, the statute calls for the appointment by the relevant state or local mental health services official of two new psychiatric medical examiners.  *See id.*  Moreover, the trial court's effective denial of Lewis's right to cross-examine Bodek, an aspect of its broader denial of his "opportunity to be heard", appears directly contrary to existing New York case law.  *See People v. Charette*, 431 N.Y.S.2d 733, 734 (N.Y. App. Div. 1980) (competency hearing "should proceed with due regard to defendant's fundamental constitutional right to be confronted by witnesses testifying against his interest and to the right of cross-examination"); *People v. Torres*, 607 N.Y.S.2d 669, 670 (N.Y. App. Div. 1994) ("The constitutional right of an accused to confront and cross-examine witnesses against him is fundamental to a fair trial, and extends to preliminary hearings as well as the trial itself even though the hearing itself is not 'a trial on the merits.'  In short, a hearing that precludes full participation by the defendant is no hearing at all.") (internal citations omitted); *see also Panetti v. Quarterman*, 127 S. Ct. at 2857 ("If this did, in fact, constitute a violation of the procedural framework Texas has mandated for the adjudication of incompetency claims, the violation undermines any reliance the State might now place on Justice Powell's assertion that 'the States should have substantial leeway to determine what process best balances the various interests at stake.'") (quoting *Ford v. Wainwright*, 477 U.S. at 427).

## V.     The Confrontation Clause and Competency Hearings

The Report found, and petitioner argues, that the Confrontation Clause imposes additional requirements upon the conduct of a competency hearing.  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const., amend VI.  In petitioner's estimation, the Confrontation Clause requires that the witnesses at a competency hearing be subject to effective cross-examination.  (Pet. Obj. at 7.)  It is well established, of course, that criminal defendants have a Sixth Amendment right to cross-examine the witnesses against them at trial, and that right has been made obligatory on the states by the Fourteenth Amendment.  *See Pointer v. Texas*, 380 U.S. 400 (1965).  Petitioner argues that the Sixth Amendment extends this right to witnesses at pre-trial hearings.   While the Court believes that it is likely that due process will often require cross-examination of witnesses at competency hearings to protect a defendant's right, under *Pate, Drope* and *Medina*, to controvert the state's evidence,[12] it is unclear whether

---

[12] This is certainly the view of the Third and D.C. Circuits.  *See Hull v. Kyler*, 190 F.3d 88, 111 (3d Cir. 1999) (finding that *Pate*, *Drope*, and relevant Third Circuit precedent "unequivocally provide that a criminal defendant is entitled to adequate procedures, including the opportunity to present evidence and to cross-examine government witnesses, when his competency is at issue."); *United States v. Caldwell*, 543 F.2d 1333, 1348 (D.C. Cir. 1974) ("In competency hearings, the limitation or expansion of the scope of testimony and the qualifications of participating witnesses lie squarely within the trial judge's discretion. While the proceeding need not be lengthy or involved, 'as a minimum we think the inquiry must be of record and both parties must be given the opportunity to examine all witnesses who testify,' and the decision on competence must have rational support in the evidence.") (quoting *Hansford v. United States*, 365 F.2d 920, 923 n.8 (D.C. Cir. 1966)); *see also Reynolds v. Norris*, 86 F.3d 796, 800 (8th Cir. 1996) ("To safeguard this due process guarantee [of competence to stand trial], the Supreme Court has established a separate procedural due process right to a competency hearing.").  And while not necessarily embodying a constitutional command, federal law provides that at civil and criminal competency hearings, "the person whose mental condition is the subject of the hearing shall be represented by counsel" and "shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing."  18 U.S.C. § 4247(d); *see also Vitek v. Jones*, 445 U.S. 480, 495-96 (1980) (affirming district court's decision in a proceeding to transfer a convicted felon to a mental hospital, due process entitled the inmate to, *inter alia* "[a]n opportunity at the hearing to present testimony of witnesses by the defense and to confront and cross-examine witnesses called by the state, except upon a finding, not arbitrarily made, of good cause for not permitting such presentation, confrontation or cross-examination").  In the Eighth Amendment context, the Supreme Court has

the Supreme Court has recognized such a right under, or that such a right necessarily derives from, the Confrontation Clause. *See Kentucky v. Stincer*, 482 U.S. 730 (1987).

In *Stincer*, the trial court had excluded the defendant, but not his counsel, from an *in camera* hearing to assess whether two child witnesses were competent to testify at trial. *Id.* at 733. After the trial court found that the witnesses were competent, the witnesses testified in open court in the presence of the defendant. *Id.* at 740. They were subject to a full cross-examination. *Id.* In assessing whether the defendant's rights under the Confrontation Clause had been violated, the Court observed that it was "more useful to consider whether excluding the defendant from the hearing interferes with his opportunity for effective cross-examination" than to "attempt[] to characterize a competency hearing as a trial or pretrial proceeding." *Id.* Because defendant, with the assistance of counsel, had a full opportunity to cross-examine the witness at trial, the Court concluded that the defendant had not been denied his rights under the Confrontation Clause. *Id.* at 744.

*Stincer* does not address the question of whether the Confrontation Clause guarantees defendants the opportunity for the effective cross-examination of competency hearing witnesses, such as Mr. Bodek, who do not testify at trial. Rather, read narrowly,[13] as required by AEDPA, *Stincer* holds that the Sixth Amendment precludes limitations on a defendant's confrontation of witnesses at competency hearings to the

---

considered but not resolved the issue of whether cross-examination of witnesses at competency hearings is a due process right. *See Ford*, 477 U.S. at 426 (Powell, J.) (finding in context of competency to be executed "ordinary adversarial procedures—complete with live testimony, cross-examination, and oral argument by counsel—are not necessarily the best means of arriving at sound, consistent judgments as to a defendant's sanity"); *see also Panetti*, 127 S.Ct. at 2858 (in light of failure to provide opportunity to respond to evidence solicited by state court, the right to cross-examination need not be addressed.)

[13] As discussed earlier, *supra* note 11, the Court understands *Carey v. Musladin* to require a doctrinally (rather than factually) narrow construction of the Supreme Court's holdings.

extent that such that such limitations interfere with the defendant's opportunity for effective cross-examination at trial. *See id.* at 738 n.9 ("As is demonstrated below, respondent's ability to engage in full cross-examination *at trial* was not affected by his exclusion from the competency hearing nor was his opportunity to engage in *effective* cross-examination [at trial] interfered with by his exclusion.") (emphasis in original).[14]

Although the *Stincer* Court downplayed the significance of whether a competency hearing was a trial or pretrial proceeding in the context of trial witnesses, subsequent cases imply that for Confrontation Clause purposes, a competency hearing may or may or may not enjoy implicit protection under the Sixth Amendment. In *Coy v. Iowa*, 487 U.S. 1012, 1020-21 (1988) Justice Scalia noted:

> It is true that we have in the past indicated that rights conferred by the Confrontation Clause are not absolute, and may give way to other important interests. The rights referred to in those cases, however, were not the right narrowly and explicitly set forth in the Clause [face-to-face confrontation at trial], but rather rights that are, or were asserted to be, reasonably implicit -- namely, the right to cross-examine; the right to exclude out-of-court statements, and the *asserted* right to face-to-face confrontation at some point in the proceedings other than the trial itself. To hold that our determination of what implications are reasonable must take into account other important interests is not the same as holding that we can identify exceptions, in light of other important interests, to the irreducible literal meaning of the Clause: a right to *meet face to face* all those who appear and give evidence *at trial*.

*Id.* (first emphasis added) (internal citations omitted). Consequently, state courts and lower federal courts have expressed uncertainty as to whether the Confrontation Clause applies to hearings held to determine a defendant's competency. *See United States v. Hamilton*, 107 F.3d 499, 504 (7th Cir. 1997) ("[I]t is unclear whether the Confrontation

---

[14] The discussion preceding this statement in *Stincer* makes clear that by the opportunity to engage in *effective* cross-examination, the Court was referring to the notion that the Confrontation Clause may forbid excessive limits on a defendant's access to information before trial that "hinder that defendant's opportunity for *effective* cross-examination *at trial*." *Stincer*, 482 U.S. at 738 n. 9 (first emphasis in original).

Clause applies to pretrial competency hearings."); *United States v. Burhoe*, 535 F. Supp. 2d 176, 180 (D. Me. 2008) ("Whether a defendant is entitled to the full panoply of constitutional rights at a . . . hearing to determine competency under [18 U.S.C.] § 4241 is not settled.").

However, the Court does not and need not determine the role that the Confrontation Clause plays in regulating the giving of testimony of non-trial witnesses at competency hearings. For, as discussed more fully above, the Court holds: (1) that the Supreme Court has clearly established that due process requires the state to provide adequate procedures to allow criminal defendants a reasonable opportunity to demonstrate that they are not competent to stand trial; and (2) that the Appellate Division unreasonably applied that rule when it approved an ad hoc competency procedure that precluded petitioner from responding to the decisive psychiatric evidence solicited and relied upon by the trial court after the close of an adversary hearing.

## VI.    Harmless Error and the Appropriate Remedy

"[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* [*v. Abrahamson*], 507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)." *Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007). Under the *Brecht* standard, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at 2325 (quoting *Brecht*, 507 U.S. at 631).

In this case, the importance of the Bodek report to the trial court's determination of defendant's competence to stand trial was unequivocally demonstrated by the court's

actions and statements. Because the trial court was apparently uncertain as to petitioner's competence after the hearing was conducted, the court commissioned Bodek to conduct another competency examination. Then, in its written opinion, the court confirmed that it relied heavily on Bodek's report. In this context, the Court concludes that the trial court's reliance on Bodek's report in violation of the Due Process Clause had a substantial and injurious effect or influence in the trial court's determination of petitioner's competence to stand trial. *Cf. United States v. Hamilton*, 107 F.3d 499, 504 (7th Cir. 1997) (assuming without deciding on direct appeal that prisoner's confrontation rights were violated and finding that the alleged confrontation error—that one of the government's witnesses testified by telephone—was harmless as the district court had not based its opinion on the witness's testimony and the other evidence of competency was overwhelming).

Because the Court finds that the error in the competency hearing was not harmless, it must now decide whether it is possible to retrospectively determine petitioner's competency (or lack thereof) at the time of his 1999 trial. Retrospective competency determinations are generally disfavored. *See Drope*, 420 U.S. at 183 (noting "the inherent difficulties of such a nunc pro tunc determination under the most favorable circumstances"); *Pate*, 383 U.S. at 387 ("[W]e have previously emphasized the difficulty of retrospectively determining an accused's competence to stand trial. The jury would not be able to observe the subject of their inquiry, and expert witnesses would have to testify solely from information contained in the printed record."); *United States v. Nichols*, 56 F.3d 403, 415 (2d Cir. 1995) (observing that "retrospective" hearings are "disfavored under the Supreme Court's decisions"). Nevertheless, retrospective

determinations "are permissible whenever a court can conduct a meaningful hearing to evaluate retrospectively the competency of the defendant." *Maynard v. Boone*, 468 F.3d 665, 675 (10th Cir. 2006) (internal quotations omitted); *accord Reynolds v. Norris*, 86 F.3d 796, 802 (8th Cir. 1996); *Moran v. Godinez*, 57 F.3d 690, 696 (9th Cir. 1994); *cf. James v. Singletary*, 957 F.2d 1562, 1571 (11th Cir. 1992) (opining in *dicta* that if a petitioner demonstrates a deprivation of his procedural right to adequate competency procedures, the state should bear the burden in a hearing before the federal habeas court of proving petitioner's competence at the time of his trial). In determining whether a meaningful hearing is possible, courts look to:

> (1) [t]he passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with defendant before and during trial, including the trial judge, counsel for both the government and defendant, and jail officials.

*McGregor v. Gibson*, 248 F.3d 946, 962–63 (10th Cir. 2001) (en banc) (internal citations omitted); *see also Nichols*, 56 F.3d at 415 (holding that, even if it could be considered "retrospective," hearing conducted by trial court on second day of trial was consistent with due process given the lack of a lapse in time, the fact that the psychologist who testified at the hearing had interviewed petitioner and prepared a report five weeks before trial, and the trial court's direct observation and question of petitioner just before the trial).

In this case, the lapse of time is certainly significant. *See Pate*, 383 U.S. at 387 (finding that the fact that "hearing would be held six years after the fact aggravates the[] difficulties [of retrospective competency determinations]"); *Drope*, 420 U.S. at 183 (retrospective determination inappropriate where lapse of nearly six years). Nevertheless,

"[t]he passage of time is not an insurmountable obstacle if sufficient contemporaneous information is available." *Reynolds*, 86 F.3d at 803; *accord id.* (lapse of four years did not preclude retrospective competency determination); *Maynard*, 468 F.3d at 675 (passage of eight years did not foreclose retrospective determination). In such cases, however, special circumstances permitted an "accurate assessment" of defendant's mental condition at the time of trial. *See Reynolds*, 86 F.3d at 802-803 (citing to "the unusual amount of contemporaneous evidence specifically relating to [defendant's] competency"); *Maynard*, 468 F.3d at 675 (prior competency hearing record substantial and no basis for claim that medical records were incomplete).

In the present case there would undoubtedly be a number of non-expert witnesses available who had the opportunity to interact with defendant and could testify as to their prior observations. There would also be a record of the reports of Drs. Owens and Gordon, who concluded defendant was incompetent in November 1998, as well as the reports of Dr. Kirschner, Mr. Bodek and Dr. Trachtenberg, who opined that defendant was competent in January, April and May 1999. There are two critical flaws in the record of the expert reports, however, that preclude an accurate retrospective assessment of defendant's competency at the time of trial. First, it seems clear that the opinions of Drs. Owens and Gordon were stale by the time of trial and would be of little use to a court in now attempting to determine defendant's mental capacity in May 1999. Second, while the opinions of at least Bodek and Trachtenberg may not suffer from staleness, defendant never had the opportunity to rebut them and, by the passage of time, defendant is effectively denied the opportunity to now do so. While his counsel may be able to cross-examine these experts at a retrospective hearing, the ability to elicit contrary

opinions is gone. Thus the record necessarily remains incomplete and any attempt at retrospective determination of defendant's competency to stand trial would suffer the same infirmities as the ad hoc competency procedure employed by the trial court, only more so.

## CONCLUSION

The Supreme Court has held that where there is a sufficient doubt as to the competency of a criminal defendant, the defendant must be afforded a reasonable opportunity to demonstrate that he is not competent to stand trial. Because Lewis was denied a chance to respond to or controvert evidence solicited and relied upon by the trial court after the close of the competency hearing, the Court concludes that he was not afforded the reasonable opportunity to demonstrate his lack of competence guaranteed by the Due Process Clause. The Appellate Division's contrary conclusion was unreasonable in light of the then-existing holdings of the Supreme Court.

Because a meaningful retrospective hearing as to petitioner's competence at the time of trial cannot be held, the Court orders that a writ of habeas corpus be issued and that defendant be discharged unless the State elects to retry him within 90 days.

SO ORDERED.

Dated: New York, New York
August 27, 2008

Richard J. Holwell
United States District Judge

31